## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ASSOCIATION CASUALTY INSURANCE COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION** |
| **PARAGON FOODS, INC.; FERGUS ROBINSON; DON GURLEY; IRISH NIXON; RODRIQUEZ THORNTON; ANTAVIOUS ROBINSON; AND WILLIE SANFORD,** | **FILE NO.:  1:04-CV-3752** |
| **Defendants.** | |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT PARAGON FOODS INC.'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Association Casualty Insurance Company ("Association Casualty"), Plaintiff in the above-styled action, and files its Brief in Response to Paragon Foods, Inc.'s ("Paragon") Motion for Summary Judgment as follows:

A. **Paragon has cited no credible authority for the proposition that coverage or a duty of defense applies under subsection c. of the Association Casualty policy's definition of "personal and advertising injury"**

In support of its argument that Association Casualty owes coverage and a duty of defense for the claims asserted by the plaintiffs in the underlying tort action under subsection c. of the policy's definition of "personal and advertising injury," Paragon relies exclusively on *International Insurance Co. v. Rollprint Packaging Products,* 312 Ill.App.3d 998, 728 N.E.2d 680 (1st Dist, 3rd Div. 2000) and *Insurance Company of North America v. Forrest City Country Club,* 36 Ark. App. 124, 819 S.W.2d 296 (1991).

Notably, the relevant policy language in *Rollprint* was significantly different than the definition of "personal and advertising injury" as contained in Paragon's liability policy with Association Casualty. In relevant part, the policy in *Rollprint* defined "personal injury" to include "[w]rongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies." 728 N.E.2d at 685. By contrast, Paragon's policy with Association Casualty defines "personal and advertising injury" to include:

> c. The wrongful eviction from … *the right of private occupancy* of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landowner or lessor;"

(Emphasis supplied). The difference in the language of the respective policies is determinative.

2

In *Rollprint,* the plaintiff was an employee who alleged that his employer physically frisked the employee without permission, told the employee he was fired, and physically evicted the employee from the employer's building. *Id.* at 684.  In being so "evicted" the employee was not given an opportunity to assemble and take with him his personal property, including his proprietary work papers, formulas, articles and other documents the employee had prior to his employment. *Id.*  Relying on *Z.R.L. Corp. v. Great Central Ins. Co.,* 156 IllApp.3d 856, 510 N.E.2d 102 (1987), the Illinois appellate court held that the employer's insurer, at a minimum, owed a duty of defense because the employee's claims arguably arose – at least in part – from the "wrongful eviction" of the employee from his office by his employer.[1] *Id.* at 690.  In relying on the reasoning of *Z.R.L.,* the *Rollprint* court specifically stated that "in the present case, International's policy is similar to the language in the *Z.R.L.* policy." *Id.* at 689.

In *Z.R.L.,* the policy defined "personal injury" to include simply "wrongful eviction or wrongful entry…" 510 N.E.2d at 103.  Given that broad definition, the *Z.R.L.* court held that there was an arguable "eviction" – and the insurer therefore owed a duty of defense – where an insured

---

[1] Incidentally, the court further held that the employer's insurer did not owe indemnity since it did not appear that the employee was awarded any damages arising from the "wrongful eviction." 782 N.E.2d 692-93.

nightclub forced black patrons to leave while allowing white patrons to stay.

*Id.*   Importantly, in reaching this decision, the *Z.R.L.* court distinguished *Puritan Ins. Co. v. 1330 Nineteenth Street Corp.,* 1984 C.C.H. Insurance Fire & Casualty Cases 1149, Nos. 83-2228 and 83-1754 (D. D.C. 1984). The *Z.R.L.* court stated as follows:

> "[I]n *[Puritan]* … the underlying lawsuit also was predicated on alleged racial discrimination by a restaurant.  The policy required the insurer to defend the insured in a civil action arising from a variety of offenses, the third category of which included 'wrongful entry or eviction, or other invasion of the right of private occupancy.'  The court held that the insurance policy used the phrase 'wrongful eviction' in its legal sense as meaning to turn a tenant out of possession, and thus the insurer had no duty to defend the insured in the underlying action.
>
> ***Puritan* is distinguishable from the instant case for the reason that in *Puritan* "wrongful eviction" was included in a series of terms relating to invasions "of a right of private occupancy."**

(Emphasis supplied).

The bottom line is the policy language in *Rollprint* (cited and relied upon by Paragon) and *Z.R.L.* (artfully omitted from Paragon's argument) did not relate to invasions "of a right of private occupancy" as did the language of the policy in *Puritan* and as does the language of Paragon's policy with Association Casualty.  It is clear that the Illinois courts would not have found a duty of defense or indemnity if they had been presented with the language of the *Puritan* and Paragon policies. *See, also, STK Enterprises v.*

4

*Crusader Ins. Co.,* 171 Ore. App. 9, 14 P.3d 638, 642 (2000) (noting the "significant[]" difference in language between the policy in its case – which was identical to the language in Paragon's policy with Association Casualty – as compared to the policy language in *Z.R.L.)*

Meanwhile, and as set forth in Association Casualty's brief in support of its motion for summary judgment, the *Forrest City* opinion (referred to as *INA* in Association Casualty's brief) has been specifically and thoroughly discredited in subsequent rulings of the California and Oregon courts in *Zelda, Inc. v. Northland Ins. Co.,* 66 Cal. Rptr.2d 356, 364 (1997) and *Westfield Ins. Group v. J.P. Wharf's,* 859 A.2d 74, 76 (Del. Supr. 2004) respectively. Moreover, and as also pointed out in Association's Casualty's brief in support of summary judgment, *Forrest City* remains the first and only case to have determined that the subsection c. definition of "personal and advertising injury" definition as contained in Form CG 00 01 10 01 (which is the Association Casualty form) covers a racial-discrimination claim. Rather than belabor the point here, Association Casualty directs the Court to its brief in support of its summary judgment motion for a more complete discussion of *Forrest City.*

Ultimately, the case law remains almost unanimous (notwithstanding the aberration that is *Forrest City),* there can be no coverage for a claim

under the subsection c. definition of "personal and advertising injury" as contained in Form CG 00 01 10 01 unless the claimant has some form of possessory interest in the place from which he or she is being evicted from. [2] As mere patrons or customers of the Cairo Huddle House, the plaintiffs in the underlying case did not have the requisite possessory interest to trigger either coverage or a duty of defense under the subsection c. definition of "personal and advertising injury" of Paragon's policy with Association Casualty.  It is also important to note that the underlying plaintiffs have not even alleged a "wrongful eviction from … the right of private occupancy" of the Cairo Huddle House, which further underscores that Association Casualty does not even have a duty to defend Paragon in the underlying lawsuit as a matter of law.

---

[2] *See, e.g., United States v. Security Mgmt. Co,.Inc.,* 96 F.3d 260, 264 (7th Cir. 1996) (applying Wisconsin law); *City of Delray Beach, Florida v. Agricultural Ins. Co.,* 85 F.3d 1527, 1534 (11th Cir. 1996) (applying Florida law); *Dryden Oil Co. of New  England v. Travelers Indem. Co.,*  91 F.3d 278, 288 (1st Cir. 1996) (applying Massachusetts law); *Red Ball Leasing v. Hartford Accident and Indem. Co.,* 915 F.2d 306, 312 (7th Cir. 1990) (applying Indiana law); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.,* 933 F.Supp. 675, 680 (E.D.Mich 1996) (applying Michigan law); *Martin v. Brunzelle,* 699 F.Supp. 167, 170 (N.D.Ill. 1988) (applying Illinois  law); *Liberty Mut. Ins. Co. v. East Central Okla. Elec. Corp.,* 97 F.3d 383, 390-91 (Okla. 1996) (applying Oklahoma law); *Stein-Brief Group, Inc.v. Home Indem. Co.,* 65 Cal.App.4[th] 364,373, 76 Cal.Rptr.2d 3 (1988) (applying California law); and *County of Columbia v. Continental Ins. Co.,* 189 A.D.2d 391, 595 N.Y.S.2d 988, 991 (1993) (applying New York law); *Westfield Ins. Group v. J.P. Wharf's, Ltd,* 859 A.2d 74 (Del. Supr. 2004) (applying Delaware law); *Groshong v. Mutual of Enumclaw,* 329 Or. 303, 985 P.2d 1284 (Ore. Supr 1999) (applying Oregon law); *State Farm Fire & Cas. Co. v. Burkhardt,* 96 F.Supp.2d 1343, 1351 (M.D.Ala. 2000) (applying Alabama law); and *Decorative Ctr. V. Employers Cas.,* 833 S.W.2d 257, 262 (Tex. App. 1992) (applying Texas law).

### B.   Paragon's argument that the underlying plaintiffs' claims amount to covered libel or slander is nonsense

Without citing any *relevant* authority,[3] Paragon takes the preposterous position that its allegedly discriminatory practices are covered offenses under subsection d. of "personal and advertising injury" which offers coverage for the following offense:

> d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

Assuming *arguendo* that all claims for racial discrimination are tantamount to claims for defamation as Paragon contends, it is plainly apparent from the language of the Association Casualty policy that not all defamation claims are covered.  Rather, coverage is triggered only if the insured's publication libels or slanders another's *"goods, products, or services."*  Therefore, even if there were some defamatory "publication" by Paragon vis-à-vis the underlying plaintiffs (and there is no such evidence or even allegation by the underlying plaintiffs), coverage would not be

---

[3] Referring to a footnote, Paragon states that "no less an authority than the United States Supreme Court has acknowledged that '[a]n action to address racial discrimination may also be likened to an action for defamation ….'"  *See Curtis v. Loether,* 415 U.S. 189, 195 n.10 (1974).  The point Justice Marshall was trying to make in that footnote was that racial discrimination claims under Title VII are akin to common law torts (including defamation) and, therefore, Title VII plaintiffs are entitled to jury trials under the Seventh Amendment. *Id.* at 194-96.  Obviously, *Loether* had nothing to do with – and provided no helpful analysis in determining – whether racial discrimination claims are *per se* covered as "personal and advertising injury" as Paragon apparently would have this Court believe.

triggered because Paragon's allegedly discriminatory *conduct* (in treating black patrons differently than white patrons) did not in any way refer to or affect the underlying plaintiffs' "goods, products, or services." Indeed, the stipulated facts of this case do not even refer to any "publication" of any libelous or slanderous "material" and there is no reference to the underlying plaintiffs' "goods, products, or services." Rather, Paragon is desperately grasping at straws in its tortured effort to find coverage under the Association Casualty policy.

As noted above, Paragon failed to provide any relevant authority to support its argument that coverage is triggered by the subsection d. definition of "personal and advertising injury." That is because there is none. Indeed, that argument has been unanimously rejected the few times it has been asserted. *See, e.g., Travelers Cas. & Sur. of Ill. v. Rage Admin & Marketing,* 42 F.Supp.2d 1159, 1170-71; and *Rockgate Mgm't Co. v. CGU Ins.,* 32 Kan.App.2d 743, 88 P.3d798, 806 (2004). It is also notable that the policies in all of the cases holding that no coverage exists for racial discrimination claims under the subsection c. (wrongful eviction) definition of "personal and advertising injury," also contained the same subsection d. definition relating to libel and slander as found in the Association Casualty policy. Obviously, none of those cases found coverage under subsection d.

as urged by Paragon. *See, e.g., Zelda, Inc. v. Northland Ins. Co.,* 66 Cal. Rptr.2d 356, 364 (1997) and *Westfield Ins. Group v. J.P. Wharf's,* 859 A.2d 74, 76 (Del. Supr. 2004); *U.S. v. Security Mgmt. Co.,* 96 F.3d 260, 264 (7th Cir. 1996); and *STK Enterprises v. Crusader Ins. Co.,* 171 Ore. App. 9, 14 P.3d 638 (2000).

It is also instructive to look at the definition of libel and slander under Georgia law (which is controlling in this case).  Libel is defined as a "false and malicious defamation of another, *expressed in print, writing, pictures, or signs*, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. 51-1-1(a) (emphasis supplied).  The libel statute further provides that "*publication* of the libelous matter is essential to recovery." O.C.G.A. 51-1-4(b) (emphasis supplied).  In this case, there is no evidence or allegation that Paragon "published" anything (much less something defamatory) in "print, writing, pictures or other signs."  Therefore, there is no libel claim under the underlying action period.

Slander is defined under Georgia law as "oral defamation consist[ing] in:

> (1) Imputing to another a crime punishable by law;
>
> (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;

> (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or
>
> (4) Uttering any disparaging words productive of special damage which flows naturally therefrom."

O.C.G.A. 51-1-4(a).  The code section on slander goes on to provide as follows:

> In the situation described in paragraph (4) of subsection (a) of this Code section, special damage is essential to support an action; in the situations described in paragraphs (1) through (3) of subsection (a) of this Code section, damage is inferred.

O.C.G.A. 51-1-4(b).

The bottom line is there are not even any allegations (much less evidence) of slander as defined by Georgia law in the underlying plaintiffs' complaint.  Therefore, no duty of defense or coverage is triggered under the subsection d. definition of "personal and advertising injury" as contained in Paragon's policy with Association Casualty.[4]

## **CONCLUSION**

For all the foregoing reasons, this Court should deny Paragon's Motion for Summary Judgment.

---

[4] It is also important to note that Paragon and Association Casualty have submitted the coverage issues to this court relying exclusively on certain stipulations of fact that are on file with the Court.  Paragon has pointed to nothing in the stipulations of fact that fit the definitions of libel or slander under Georgia law.

Respectfully submitted,

*/s/ **Richard C. Foster***

_____

Richard C. Foster
Georgia State Bar No. 271057
*Attorney for Plaintiff*

HICKS CASEY & FOSTER, P.C.
136 North Fairground Street
Marietta, Georgia 30060
(770) 428-1000
(770) 428-4684 – facsimile

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ASSOCIATION CASUALTY INSURANCE COMPANY,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**PARAGON FOODS, INC.; HUDDLE HOUSE, INC.; FERGUS ROBINSON; DON GURLEY; IRISH NIXON; RODRIQUEZ THORNTON; ANTAVIOUS ROBINSON; AND WILLIE SANFORD,**<br><br>      **Defendants.** | **CIVIL ACTION**<br><br>**FILE NO.: 1:04-CV-3752** |

## CERTIFICATE OF SERVICE

This is to certify that I have this date served counsel for the opposing party in the foregoing matter with a copy of ***Plaintiff's Response to Defendant Paragon Foods Inc.'s Motion for Summary Judgment*** by using the *CM/ECF system (Pacer)* which will automatically send email notification of such filing to the following attorneys of record:

Kenneth A. Shapiro, Esquire
Jason King, Esquire
MITCHELL & SHAPIRO
3490 Piedmont Road, NE
Suite 650
Atlanta, Georgia 30305

Helen H. Albee
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola St.
Jacksonville, FL 32204

This the 10th day of November, 2005.

Respectfully submitted,

*/s/ **Richard C. Foster***

_____

Richard C. Foster